GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
ELISSE LAROUCHE
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: elisse_larouche@fd.org

Counsel for Defendant SAGASTUME PINEDA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE MARIA SAGASTUME PINEDA,

Defendant.

**Case No.:** CR 20-444 –420 SI

**SENTENCING MEMORANDUM**

**Court:** Courtroom 1, 17th Floor
**Hearing Date:** July 29, 2021
**Hearing Time:** 1:00 p.m.

## INTRODUCTION

Jose Maria Sagastume Pineda, a 22-year-old man with no prior criminal record, comes before this Court for engaging in street-level drug activity with a co-defendant. Like many of the defendants before the court in these street-level drug cases in the Tenderloin, Mr. Sagastume Pineda grew up in a dangerous and impoverished environment in Honduras. As his family's humble letters describe, the fate of teenage boys in Honduras is gang recruitment with the related dangers. To find a better life and support his family, he left his mother, siblings, and home country. In the U.S., Mr. Sagastume did well for a while and worked as a painter. He also has a partner with whom he has a

baby girl. When the pandemic hit, however, Mr. Sagastume Pineda was out of work. In a desperate effort to provide basic necessities for his partner and newborn daughter, he resorted to selling drugs on the street. In June 2020, he was arrested by San Francisco Police officers. He was charged at the county level for the present drug offense and placed in an alternative court program. On September 22, 2020, Mr. Sagastume Pineda was attending his county court matter when he was arrested federally for the same conduct. On October 1, 2020, he was released.

Mr. Sagastume Pineda has been on federal pretrial release for nearly ten months with no violations or contacts with law enforcement. He has worked and provided for his family. Being detained for over a week and living with the constraints of the ankle monitor and curfew for ten months is a significant consequence for someone who has never been convicted of an offense. Mr. Sagastume Pineda also faces immigration consequences as a result of his conviction. Even though this case constitutes his one and only criminal conviction, that is enough to lead to not only his deportation back to Honduras, but also to ineligibility for numerous avenues of relief in immigration proceedings and likely permanent inadmissibility to the U.S. It means that once deported, he may never come to the U.S. to see his daughter. Before his near-certain deportation, he will likely serve additional time in immigration custody, the length of which is unknown.

Mr. Sagastume Pineda will be before the Court to plead guilty pursuant to a 11(c)(1)(A) and 11(c)(1)(B) plea. He agrees with the Presentence Report's finding that he is in Criminal History Category I and his offense level is 17 based on the quantity of cocaine base (crack) that he had. His guideline range is 24–30 months, but probation, recognizing bases for a downward variance, recommends a sentence of 12 months and 1 day. Mr. Sagastume Pineda joins with probation in urging the Court to vary downward, but contends a greater variance is merited. Mr. Sagastume Pineda takes responsibility for his actions and understands that he must face consequences for what he has done. He respectfully requests that the Court vary downward and impose a sentence of time served. Such a sentence is sufficient but not greater than necessary to achieve the sentencing goals delineated in 18 U.S.C. § 3553(a).

## ARGUMENT

### I. The History and Characteristics of Mr. Sagastume Pineda

#### A. Mr. Sagastume Pineda's Childhood and Adolescence Were Marked by Poverty and Violence in Honduras.

Mr. Sagastume Pineda was born in Honduras. PSR ¶ 36. His mother primarily raised him after his father left his mother and the family early on in his life. PSR ¶ 37. Mr. Sagastume grew up poor. *Id*. His family never ate a lot, they lived in a wooden house/structure, and his mother washed clothes to provide for the family. *Id*. But, even then, she could not fully provide for her seven children and some of the older children had to live with another woman who could care for them. *Id*. By age 15, Mr. Sagastume stopped going to school and worked to help support the family. *Id*. He sold fruit and later helped his brother at a cell phone shop. *Id*.

Growing up, he experienced head injuries and traumatic events. At around age 13, he was attacked and hit on the head on two different occasions. PSR ¶ 39. Later in his teens, his best friend was shot and killed because he was confused as a gang member. *Id*. In Honduras, Mr. Sagastume Pineda grew up around gangs, people using drugs, and other bad influences. *Id*. As his family's letters to the Court relate, there were pressures for Mr. Sagastume Pineda to join a gang in Honduras, which would include serious dangers to himself and his family. Larouche Decl. ¶ 2, Ex. A, Letters of Support.

With the dangers in his home country and the need to earn money for himself and his family, Mr. Sagastume Pineda decided to come to the U.S. when he was around 17 or 18 years old. PSR ¶ 44. He was first in ICE juvenile detention and released after some time, living in the Bay Area since then. *Id*.

#### B. Mr. Sagastume Pineda has Family for Whom he Cares and Provides.

Mr. Sagastume Pineda has been in a committed relationship with his partner for over one year and the two have a baby girl together. PSR ¶ 44. His partner works, but does not drive and relies on Mr. Sagastume Pineda to take her to work. PSR ¶ 50. The two often work opposite hours so they can switch and take shifts working and caring for the baby. *Id*. His partner will face a significant hardship when Mr. Sagastume Pineda is deported.

### C. Despite That Mr. Sagastume Pineda has Only This Conviction, he Faces Deportation and Immigration Consequences.

Mr. Sagastume Pineda was born in Honduras. Because of his conviction in this case—his only conviction—it is virtually certain that he will be deported. He also will be ineligible for numerous avenues of immigration relief and likely be permanently inadmissible to the U.S. This immigration consequence will change everything for Mr. Sagastume Pineda. He will have to go back to a country where he has little-to-no job opportunities and gang violence remains rampant. He will not be able to financially support his mother and he will not be able to provide for his partner and infant daughter. Once deported, he may never be able to come back to the U.S. to see his daughter. He may also face time in custody in immigration detention. While any additional time in custody would certainly be a punishment, the most significant punishment of deportation is already a certainty for Mr. Sagastume Pineda.

### D. Mr. Sagastume Pineda has Performed Well on Pretrial Release.

For nearly ten months, Mr. Sagastume Pineda has performed well on pretrial release. While on stringent electronic monitoring and curfew conditions, he has had no reported violations. PSR ¶ 5. He currently works full-time for a window-tinting company and makes $720, weekly, with a possible bonus of $300/week.[1] Larouche Decl. ¶ 3, Ex. B, Employer Letter. Mr. Sagastume Pineda previously worked at food packing plants, packing food and cleaning. PSR ¶¶ 58–59. Before he was out of work due to the pandemic, he worked as a contracted painter, from February 2020 to May 2020. PSR ¶ 59.

## II. The Nature and Circumstances of the Offense.

Once the seriousness of the pandemic began to set in, Mr. Sagastume Pineda stopped getting painting work and began to feel disparate. PSR ¶ 13. As he stated, "I regret what I did. I did it out necessity." *Id*. Mr. Sagastume Pineda details his stress at the time—he had to pay for rent, living expenses, his partner was pregnant, and it was difficult to find work during the pandemic. *Id*. He turned to one thing he found he could do to make money—selling drugs in the open streets, subjecting himself to significant risk that was realized when he was arrested on June 5, 2020. PSR ¶

[1] At the time of the Presentence Interview, Mr. Sagastume Pineda was working at a food manufacturing and packing plant, but has since changed jobs and now works for the window-tinting company.

7. On that day, officers of the San Francisco Police Department saw Mr. Sagastume Pineda and his co-defendant, Sarah Snider, in the Tenderloin neighborhood and saw Mr. Sagastume Pineda reaching into Ms. Snider's bag to recover something that appeared to be narcotics. *Id*. Mr. Sagastume Pineda then exchanged those drugs with another individual for money. PSR ¶ 8. That individual was subsequently stopped by police with drugs. *Id*. Officers then arrested Mr. Sagastume Pineda and Ms. Snider and searched them. PSR ¶ 9. In Mr. Sagastume Pineda's jacket, they found over 200 bags containing suspected cocaine base. *Id*. In Ms. Snider's bag, officers found bags of heroin, fentanyl, and a digital scale. *Id*. Of the cocaine base found on Mr. Sagastume Pineda, 30.1 grams *gross* of suspected crack cocaine was presumptive positive for cocaine base. PSR ¶ 10. The net weights were not determined and Mr. Sagastume Pineda will plead guilty, pursuant to a plea agreement, of having at least 20 grams of cocaine base that he intended to distribute. *See id*.

Mr. Sagastume Pineda is not a serious or high-level drug dealer. He is not someone who ran his own drug territory. He was a hand-off person, selling for others higher up in the chain of command, who shield themselves from the vulnerability of selling in the open streets. He committed this offense out of financial desperation to provide for his partner and baby born on June 18, 2020.

## III. The Court Should Consider the Crack and Cocaine Disparities in Arriving at a Just Sentence.

In imposing a sentence, this Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. Mr. Sagastume Pineda was found with and charged with possession with intent to distribute cocaine base, or crack cocaine. As the Court is undoubtedly aware of, it is well-established that the origins of the crack-cocaine disparity in sentencing has concerning roots that focused on the Black community and that effect communities of color. *See Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (holding that courts may disregard the guideline governing crack offenses (USSG § 2D1.1), after noting that 85 percent of defendants convicted of crack offenses in federal court are black).

In Mr. Sagastume's case, because he will plead to having at least 20 grams of crack, his offense level is 20 and after the adjustment for acceptance of responsibility, his guideline range is

24–30 months. PSR Recommendation at 1. **If Mr. Sagastume Pineda has been found with 20 grams of cocaine, instead of crack, his offense level would be 12, and after acceptance, his guideline range would be 6–12 months**. *See* USSG §2D1.1(14). **In other words, because of the simple difference of crack versus cocaine, Mr. Sagastume Pineda's low-end guideline is 24 months, instead of 6 months.**

The disparity of crack cocaine and the additional punishment it imposes is not supported by any rationale or tied to the goals of sentencing. That Mr. Sagastume Pineda had crack instead of cocaine does not make him more dangerous. It does not make him a more serious criminal or signal a greater role in drug trafficking. The rationale that crack was so much more dangerous and accordingly should have greater criminal punishments, has since been seriously called into question.[2] Because of the now widely-accepted understanding of how the sentencing disparity affects Black and brown individuals, just a month ago, the Biden administration backed the EQUAL Act that would eliminate the crack-cocaine disparity.[3] In short, there is a strong basis for the Court, like courts before, to vary downward from the guidelines here based on the disparity between crack and cocaine.

**CONCLUSION**

Mr. Sagastume Pineda is a young man who grew up in impoverished, dangerous conditions in Honduras. He came to the U.S. to do better for himself and provide for his family, but with the impact of pandemic on his work and the stress of having his first child, he made a

[2] *See, e.g.*, *Cracks in the System: Twenty Years of the Unjust Federal Crack Cocaine* Law, ACLU, p. ii, Oct. 2006, ("Recent data, however, indicates that significantly less trafficking-related violence is associated with crack than was previously assumed.") www.aclu.org/sites/default/files/field_document/cracksinsystem_20061025.pdf; Regina M. LaBelle, Acting Director of the Office of National Drug Control, Policy, Testimony, *Examining Federal Sentencing for Crack and Powder Cocaine*, Senate Judiciary Committee, June 22, 2021, ("[T]his sentencing disparity is not based on sound scientific evidence. We currently have a system under which the same offense – distribution of cocaine – results in radically different sentences depending on the form of cocaine, even though both formulations affect the brain in the same way.") https://www.judiciary.senate.gov/imo/media/doc/ONDCP%20%20LaBelle%20Testimony%20-%20Senate%20Judiciary%20-%20Crack%20Cocaine%20Disparity%20to%20Committee.pdf

[3] *Biden Backs Bill to End Sentencing Disparities For Crack and Powder Cocaine*, NPR June 22, 2021, https://www.npr.org/2021/06/22/1009182282/biden-backs-bill-to-end-sentencing-disparities-for-crack-and-powder-cocaine

desperate and unlawful decision he deeply regrets. He takes full responsibility for his offense. He will suffer the ultimate consequence—he will be deported away from his partner and baby daughter. He will likely be barred from future immigration relief. No additional time will serve a greater punishment upon him. Mr. Sagastume Pineda has also already spent ten months on pretrial supervision without new criminal conduct or reported violations, demonstrating to the Court that he is capable of living a law-abiding life and does not present a danger to the public. Mr. Sagastume Pineda respectfully requests that the Court to impose a sentence of time served.

July 22, 2021
Dated

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

/S

ELISSE LAROUCHE
Assistant Federal Public Defender